**Henry NOWICKI and Barbara Nowicki, Husband and Wife**

v.

**The ZONING HEARING BOARD OF the BOROUGH OF MONACA**

v.

**The Borough of Monaca, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 12, 2013.
Decided May 6, 2014.

---

2. Added by the Act of December 21, 1998,   P.L. 1202.

Richard Urick, Aliquippa, for appellant.

Albert A. Torrence, Beaver, for appellees Henry and Barbara Nowicki.

Joseph A. Askar, Beaver, for appellee Zoning Hearing Board of the Borough of Monaca.

BEFORE: LEADBETTER, Judge, and McCULLOUGH, Judge (P), and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

The Borough of Monaca (Borough) brings this appeal of the Beaver County Court of Common Pleas (Trial Court) order that reversed the denial by the Zoning Hearing Board of the Borough of Monaca (ZHB) of an application for a use variance submitted by Henry and Barbara Nowicki (collectively the Nowickis). The Nowickis applied for the use variance in order to construct a single family dwelling in the Planned River–Oriented Development District (PROD) located in the Borough. We affirm.

The Nowickis purchased parcel number 34–003–0406.000 at 604 Atlantic Avenue in Monaca, Pennsylvania (Property). The Property is .176 acres or 7,666.56 square feet of land. (Land Survey, Reproduced Record (R.R.) at 135a.) Two days before the Sales Agreement to purchase the Property was executed, the Borough enacted Section 245–12 of the Borough Ordinance (Ordinance), which changed the zoning district within which the Property was located from the R–2, Single–Family and Two–Family Residential District to the PROD. (ZHB Opinion, Findings of Fact ¶¶ 9–10.) The stated purpose of Section 245–12 is:

> to promote the private redevelopment of properties for higher residential use in an area of the Borough that has easy access to the river and the Borough's business district and to take advantage of the views of the river, the recreational

opportunities afforded by the river and the Pump Station, as well as the shopping and services available within walking distance in the business district.

Ordinance § 254–12(A). Currently, twenty-two (22) single family residences exist in the PROD district and are located in the immediate vicinity of the Property. (July 13, 2011 Hearing Transcript (H.T.) at 17, R.R. at 53a.) As of January 1, 2010, no structure has existed on the Property; a residential dwelling that had been broken into six apartments was previously situated on the Property, but the dwelling fell into disrepair, was destroyed by a fire, and was subsequently demolished by the predecessor in interest to the Nowickis. (H.T. at 54–55, R.R. at 90a–91a.)

The Nowickis applied to the ZHB for a use variance in order to construct a single-family dwelling on the Property. Eight neighbors appeared in support of the application and representatives from the Borough appeared in opposition. (See H.T., R.R. at 36a–107a.) The ZHB denied the application. The Nowickis appealed the ZHB's denial of a use variance for the Property to the Trial Court, arguing that the Ordinance was confiscatory and denied all economically viable use of the land. The ZHB argued that the Ordinance was not confiscatory because it permitted the Property to be used for both noncommercial and public recreation, and that the inability of the Nowickis to pursue a single-family residential use of the Property under the Ordinance did not establish an unnecessary hardship. See Ordinance § 245–12(B)(uses permitted by right in the PROD). The Trial Court reversed.

The Trial Court concluded that: (a) the Ordinance created an unnecessary hardship; (b) the unnecessary hardship had not been created by the Nowickis; (c) the variance would not alter the essential char-

acter of the neighborhood, nor would it be detrimental to the public welfare; (d) the variance amounted to the minimum variance that would afford relief; and (e) refusal to grant a variance amounted to a confiscation of the Property. (Trial Court April 8, 2013 Opinion and Order.) The Trial Court based its conclusions on the fact that the size of the Property prevented a reasonable use of the Property in strict conformance with the Ordinance. (*Id.* at 16.) The Borough and the ZHB (collectively Appellants) appealed the order of the Trial Court to this Court.

Before this Court, Appellants argue that the Nowickis have not satisfied the criteria necessary for variance relief. Appellants contend that: (i) the Nowickis have not established that the Ordinance so strictly regulates the Property that it is valueless for any permitted purpose, amounting to an unnecessary hardship by confiscation; and (ii) that if an unnecessary hardship does exist, it was self-inflicted.[1] Appellants also argue that the Trial Court's opinion to the contrary was in error and that the ZHB acted properly when it denied the Nowickis' application for a variance.

A variance, like a special exception, is issued by a zoning hearing board; however, unlike a special exception, a variance is not provided for in the zoning ordinance, but is permission to deviate from the ordinance in either the dimensions of the improvements made to the land or in the use of the land. A variance is the proper relief where an unnecessary

hardship attends the property; a variance cannot provide relief where a hardship afflicts the property holder's desired use of the land and not the land itself. *Yeager v. Zoning Hearing Board of the City of Allentown*, 779 A.2d 595, 598 (Pa.Cmwlth. 2001). Although zoning ordinances are to be liberally construed to allow for the broadest possible use of the land, the applicant seeking a variance bears a heavy burden. *See Beers ex rel. P/O/A Beers v. Zoning Hearing Board of Towamensing Township*, 933 A.2d 1067, 1069 (Pa. Cmwlth.2007) (the letter of the ordinance cannot be disregarded under the pretext of pursuing the spirit); *Borough of Latrobe v. Paul B. Sweeney*, 17 Pa.Cmwlth. 356, 331 A.2d 925, 927 (1975) (personal and economic considerations are not sufficient grounds upon which to base the grant of a variance). The reasons for granting a variance must be substantial, serious, and compelling. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

Section 910.2 of the Municipalities Planning Code[2] (MPC), requires an applicant seeking a variance to show, where relevant:

(1) That there are unique physical conditions peculiar to the property and that the unnecessary hardship is due to those conditions;

(2) That because of the physical conditions, there is no possibility that the property can be developed in strict conformity with the zoning ordinance and

1. Where, as here, the trial court has not taken additional evidence, this Court's scope of review is limited to determining whether the ZHB committed an error of law or abused its discretion. *Larsen v. Zoning Board of Adjustment of the City of Pittsburgh*, 543 Pa. 415, 419, 672 A.2d 286, 288 (1996). An abuse of discretion will be found only where the ZHB's findings are not supported by substantial evidence. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

2. Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202. Sections 910.2, *added by* the Act of December 21, 1988, P.L. 1329, No. 170 § 89.

that a variance is needed to enable reasonable use of the property;

(3) That unnecessary hardship has not been created by the applicant;

(4) That the variance is not detrimental to the public welfare; and

(5) That the variance is the minimum variance that will afford relief and is the least modification of the regulation at issue.

53 P.S. § 10910.2; *see also Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh,* 554 Pa. 249, 257, 721 A.2d 43, 47 (1998); *Seipstown Village, LLC v. Zoning Hearing Board of Weisenberg Township,* 882 A.2d 32, 39–40 (Pa.Cmwlth.2005). Whether an applicant is seeking a use or a dimensional variance, the applicant must, at a minimum, demonstrate that an unnecessary hardship will result if a variance is denied and that the proposed use will not be contrary to the public interest. *Hertzberg,* 554 Pa. at 257, 721 A.2d at 47. In the context of a use variance, an applicant must establish that an unnecessary hardship attends the land with evidence that: (a) the physical conditions of the property are such that it cannot be used for a permitted purpose; or (b) the property can be conformed for a permitted use only at a prohibitive expense; or (c) the property is valueless for any purpose permitted by the zoning ordinance. *Id.* While an unnecessary hardship can be established by demonstrating that the hardship falls squarely within one of these three categories, in practice the evidence presented often does not fit neatly in one category or another but overlaps. When evaluating an unnecessary hardship, use of adjacent and surrounding land is relevant. *Valley View,* 501 Pa. at 556, 462 A.2d at 640. Once an applicant has demonstrated that the property is subject to an unnecessary hardship, the party must also demonstrate that the conditions are unique to the property;

where the hardship is present in the district as a whole or in a portion of the district, the proper remedy is re-zoning rather than a variance. *Pohlig Builders, LLC v. Zoning Hearing Board of Schuylkill Township,* 25 A.3d 1260, 1272 (Pa. Cmwlth.2011).

The vast majority of instances where an unnecessary hardship attends the land arise from the physical characteristics of the property. *See, e.g. Larsen v. Zoning Board of Adjustment of City of Pittsburgh,* 543 Pa. 415, 426, 672 A.2d 286, 291 (1996) (precipitously steep backyard that was not unique to the property, but common in the neighborhood as a whole, did not create an unnecessary hardship). Typical examples of physical characteristics that create an unnecessary hardship are irregularity, narrowness, shallowness, and exceptional topography. *See, e.g., Young v. Pistorio,* 715 A.2d 1230, 1232 (Pa.Cmwlth.1998) (unique physical conditions peculiar to the property were found where the property was located on a curve and shaped like a quarter section of a circle). Less common than an unnecessary hardship due to the physical characteristics of the land, but typically relevant in high-density areas or where the land has suffered environmental contamination, is an unnecessary hardship due to the prohibitive expense of conforming a property to a permitted purpose under the ordinance. *See, e.g. Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997) (variance to construct open-air parking lot in area zoned multi-family residential granted where contamination level exceeded state and federal standards); *Logan Square Neighborhood Association v. Zoning Board of Adjustment of City of Philadelphia,* 32 Pa. Cmwlth. 277, 379 A.2d 632 (1977) (variance properly granted where the Board found that "the property is totally unusable for

any purpose permitted within the zone without demolition and extensive reconstruction and that such actions are not feasible for the site in question.").

■ Rarer still, are instances where an unnecessary hardship arises because the ordinance has rendered the property valueless for any permitted purpose as the Nowickis argue here. The majority of these unnecessary hardships arise where the character of the surrounding properties are at odds with the ordinance, such as where the area is zoned commercial, but the surrounding properties are all residential, or vice versa. *See, e.g., Wilson v. Plumstead Township Zoning Hearing Board,* 594 Pa. 416, 429, 936 A.2d 1061, 1068 (2007) (neighboring uses that were dissimilar and disharmonious was an insufficient basis for variance for residential use where the zoning was for mixed-use, specifically home-occupation use, as opposed to traditional residential use, and the character of the neighborhood reflected the type of use the ordinance was explicitly designed to provide); *Taliaferro v. Darby Township Zoning Hearing Board,* 873 A.2d 807, 812 (Pa.Cmwlth.2005) (variance granted to use property as a self-storage facility in district zoned residential where the applicant demonstrated that the property remained idle for over 50 years, that attempts to develop the property as residential were never implemented, and that the area surrounding the property was primarily commercial, including major four-lane highway adjacent to the site). Evidence that the zoned use is less financially profitable than the proposed use is insufficient to grant a variance; however, an applicant seeking a use variance need not demonstrate that the property is rendered valueless as zoned in order to show that a variance is needed to make reasonable use of the property. *Valley View,* 501 Pa. at 556, 462 A.2d at 640.

■ This last category of unnecessary hardship includes situations where the ordinance has so strictly regulated a particular property so as to become confiscatory. *Rice Family Trust v. City of St. Mary's,* 51 A.3d 913, 919 (Pa.Cmwlth. 2012). The variance granted where an unnecessary hardship is shown because of the confiscatory nature of a zoning ordinance is often referred to as a "validity variance." *Laurel Point Associates v. Susquehanna Township Zoning Hearing Board,* 887 A.2d 796, 801 (Pa.Cmwlth. 2005)("in a 'validity variance' case, the key is the actuality of confiscation, and confiscation is the unnecessary hardship."). The term "validity variance" is a misnomer in that it implies that this subset of variances is separate and apart or requires a showing different than that required for granting a "normal" variance. However, whether an applicant terms the variance sought as a "validity variance" or not, like all other variances, it will only be granted where an unnecessary hardship is demonstrated and the relevant criteria from Section 910.2 of the MPC has been satisfied. *Hunt v. Zoning Hearing Board of Conewago Township,* 61 A.3d 380, 384 (Pa. Cmwlth.2013). The only distinction with a difference among variances, be it use, dimensional or validity, is the criteria from Section 910.2 of the MPC that is considered relevant. *Hertzberg.*

■ The Nowickis argue that they are entitled to a variance because the Ordinance as applied to the Property is confiscatory. This Court has held that, at a minimum, an applicant for a variance due to the confiscatory nature of the ordinance is required to show that: (1) the effect of the regulations complained of is unique to the property and not merely a difficulty common to other lands in the neighborhood; and (2) the regulation is confiscatory in that it deprives the owner of the use of

the property. *Hoffman Mining Company, Inc. v. Zoning Hearing Board of Adams Township,* 958 A.2d 602, 612 (Pa. Cmwlth.2008). This burden is the burden required under Subsections (1) and (2) of Section 910.2 of the MPC, albeit with the necessary modification that it is the unique effect of the regulation on the property, rather than the unique physical conditions, which creates the unnecessary hardship, or confiscation, and that a variance is needed to allow a reasonable use of the land, or to avoid confiscation. *See Peirce v. Zoning Board of Adjustment of Upper Dublin Township,* 410 Pa. 262, 267, 189 A.2d 138, 141 (1963) ("the character of the terrain and other facts in [*Ferry v. Kownacki,* 396 Pa. 283, 152 A.2d 456 (1959) ] distinguish it from the case at bar. However, the rationale of *Ferry* is presently applicable because in both situations unless the variance is granted a confiscation of this land for practical purposes results.").

The Appellants contend that the Ordinance is not confiscatory and allows for a reasonable use of the Property because Section 245–12(B)(1) permits a lot with a minimum area of 7,500 square feet to be used for public and noncommercial recreation and the Property here is 166.56 square feet larger than the minimum required for these uses. Ordinance §§ 245–12(B)(1)(g) & (i), 245–12(E)(1)(c). The Ordinance defines Public and Noncommercial Recreation as:

**Recreation, Non–Commercial:** An enterprise operated by an individual or non-profit association or corporation, other than a public entity, for the pursuit of sports and recreational activities, which may be advertised to the general public, but the use of which is limited to members and their guests including, but not limited to: such establishments as country clubs, golf courses, sportsmen's clubs, golf practice facilities, playing fields, tennis or racquet clubs, swimming pools and similar facilities.

**Recreation, Public:** An enterprise owned and operated by a public entity, available to the general public, whether or not an admission fee is charged, including either indoor or outdoor facilities for the pursuit of sports, recreation or leisure activities, including, but not limited to: parks, playgrounds, playing fields, golf courses, golf or batting practice facilities, ice rinks, tennis courts, swimming pools and similar facilities.

Ordinance § 245–2. For public and non-commercial recreation uses, the Ordinance contains area and bulk regulations for the PROD that require a minimum lot width of 50 feet, a minimum front yard of 25 feet, a minimum rear yard of 30 feet, a minimum side yard of 15 feet, and off-street parking.[3] The Ordinance further specifies that the maximum lot usage not exceed fifty percent (50%). Ordinance § 245–12(E)(3)(d). We agree with the Trial Court that the Nowickis have demonstrated that the Property is subject to an unnecessary hardship as a result of the burden placed on the Property by this Ordinance. The uses permitted under the Ordinance, public and noncommercial recreation, do not allow for a reasonable use of the Property. The Nowickis have also satisfied the other relevant criteria necessary to grant a variance under Section 910.2 of the MPC.

Although the Ordinance sets the square footage necessary for public and recreation uses just below the square footage of the Property, each of the recreation uses, whether non-commercial or public, necessitates more land than is contained within

---

**3.** *See* Ordinance §§ 245–12(E)(2)(c)(width), 245–12(E)(5)(d)(front yard), 245– 12(E)(6)(d)(rear yard), 245–12(E)(7)(d)(side yard), 245–19 (off-street parking).

the bounds of the Property. The exception, of course, is for the land to be turned over to a public entity for use as a park; however, this clearly would deprive the Nowickis of use of their Property and would constitute a confiscation or taking of the Property for public use without payment of just compensation. *See Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992) (a categorical taking exists where "regulation denies all economically beneficial or productive use of land"); *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922) ("The general rule at least is that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking."). The Ordinance has a unique impact upon the Property, because, unlike other properties that were formally in the residential district and are now within the PROD, the Property does not have a preexisting structure, nor is it large enough to accommodate the high-density dwellings that the development of the PROD was, in part, enacted to spur.[4]

The hardship created by the Ordinance here is akin to that burdening the property at issue in *Valley View*. In *Valley View*, our Supreme Court reviewed an applicant's request for a variance to enable her to renovate a three-story detached house into a take-out steak sandwich shop with a two-family dwelling. *Id.* at 554, 462 A.2d at 639. A year prior to the current owner's purchase of the property, the district had been rezoned single-family residential, and the zoning board rejected the variance

request on that basis. *Id.* The record demonstrated that the property was located between a 24–hour convenience store and a gas station, and situated on a heavily traveled roadway with extensive commercial and industrial uses in the immediate vicinity. *Id.* at 559, 462 A.2d at 642. Our Supreme Court concluded that evidence of the commercial uses of the surrounding properties amounted to substantial evidence from which the Board could "infer that a property so situated would be undesirable and hence unmarketable for residential use," and that an owner need not present evidence of attempts to sell the property or direct evidence of the value of the property as zoned in order to establish that a variance is needed to make reasonable use of the property. *Id.* The Nowickis' request for variance relief here must likewise be granted to allow for reasonable use of the Property.

The size of the Property and its location within a predominately single-family residential portion of the PROD establish that it would be undesirable and ultimately unmarketable for an economically viable recreation use, such as the golf practice facility or skating rink delineated in the Ordinance. The surrounding single-family residential homes show that the addition of another such home on the Property will not be detrimental to the public welfare, will blend harmoniously into the surrounding neighborhood, and is the minimum variance that will afford relief while still allowing a reasonable use of the Property.[5] *See* 53 P.S. § 10910.2(4) & (5).

---

**4.** Section 245–12 of the Ordinance provides that "Single Family Dwellings or Duplexes Reconstructed After January 1, 2010" are permitted as a conditional use, subject to approval by the Borough Council. Ordinance § 245–12(D)(1)(c). Because the Property does not currently have a structure on it that

can be reconstructed, the Borough Council does not have authority under Section 245–12 of the Ordinance to grant conditional use approval for a single-family dwelling or a duplex.

**5.** Our Supreme Court, in *Poster Advertising Co. v. Zoning Board of Adjustment*, 408 Pa.

The record also makes clear that the hardship to the Property was not self-inflicted. In *Wilson v. Plumstead,* our Supreme Court addressed the question of whether an applicant has created a self-inflicted hardship, in which case a variance request should be denied. 594 Pa. at 431, 936 A.2d at 1070. The Court held that it is not enough that an applicant knew or should have known how the property was zoned to demonstrate that a hardship was self-inflicted; such a holding, the Court concluded, would mean that only the owner of the property at the time the alleged hardship was created could seek a variance and that the variance could be denied simply because of the use an applicant sought. *Id.; Manayunk Neighborhood Council v. Zoning Board of Adjustment of City of Philadelphia,* 815 A.2d 652, 657 (Pa. Cmwlth.2002) (pre-purchase knowledge of zoning restrictions, without more, does not create a self-inflicted hardship; where hardship arises from the intensity of the restriction, the right to relief runs with the land). Instead, the Court reiterated that a hardship is self-inflicted where an appli-

cant purchased the subject property for too high a price.[6] *Wilson v. Plumstead,* 594 Pa. at 431, 936 A.2d at 1070; *Manayunk Neighborhood Council,* 815 A.2d at 657 (to be self-inflicted, a hardship must arise from the purchase itself, as in instances where the price paid was too dear).

The facts here do not support Appellant's contention that the unnecessary hardship was self-inflicted. The ZHB found that the Nowickis paid fifty thousand dollars ($50,000) for the Property. The ZHB did not find that the price paid for the Property was too dear, nor was there any evidence in the record to support such a claim. The fact that the Property became part of the PROD two days before the Nowickis executed the Sales Agreement to purchase the Property, standing alone, is not sufficient to bar relief. Without proof that the Nowickis or their predecessors in interest created the unnecessary hardship, the right to variance relief runs with the land.

Accordingly, because the Nowickis have demonstrated that the Ordinance as ap-

---

248, 182 A.2d 521 (1962), concluded that an applicant had shown that a property zoned residential was only suitable for commercial use where the size and dimension of the land left over after a taking prevented the construction and use of any residence. 408 Pa. at 251, 182 A.2d at 524. The Court held that the construction of a billboard on the property, although otherwise prohibited in the district, was proper, not because of economic hardship, but because otherwise productive use of the land would be denied. 408 Pa. at 252, 182 A.2d at 524; *see also Tinicum Township v. Jones,* 723 A.2d 1068, 1071 (Pa. Cmwlth.1998) ("It is well established that a preexisting lot which has been rendered undersized by the subsequently enacted zoning requirement must be permitted either as a nonconforming lot or by a variance, to avoid a confiscation of property."); *Jacquelin v. Horsham Township,* 10 Pa.Cmwlth. 473, 312 A.2d 124 (1973) (holding that the combined effect of the ordinance and the refusal of the Board to grant a variance precluded produc-

tive use of the property and thereby imposed an unnecessary hardship).

6. Other examples of self-inflicted hardship include: a condition of the land created due to neglect, an irregularly sized and shaped parcel created due to a transaction, and peculiar physical conditions created by a subdivision. *See, e.g., Arter v. Philadelphia Zoning,* 916 A.2d 1222, 1228 (Pa.Cmwlth.2007) (a use variance to build a funeral home and crematorium on the grounds of an existing cemetery was denied where the evidence demonstrated that the hardship created by the deteriorated condition of the property was due to decades of neglect and not because the current use was financially impractical); *Jacquelin v. Zoning Hearing Board of Hatboro Borough,* 126 Pa.Cmwlth. 20, 558 A.2d 189, 192 (1989) (a subdivision of merged tracts of residential property into two separate lots, one of which is undersized, constitutes a self-inflicted hardship).

plied to the Property is confiscatory, creating an unnecessary hardship that was not self-inflicted, the order of the Trial Court reversing the ZHB and granting the Nowickis' application for a variance is affirmed.

### ORDER

AND NOW this 6th day of May, 2014, the order of the Court of Common Pleas of Beaver County in the above-captioned matter is AFFIRMED.